## LEWIS E. TAYLOR
### *v.*
## STATE OF ILLINOIS.

*Opinion filed May 22, 1914.*

1. RESPONDEAT SUPERIOR—*rule of not applicable to State.* The rule of *respondeat superior* does not apply to the State.

2. MASTER AND SERVANT—*law of not applicable to State.* The law of master and servant is inapplicable as between the State and one of its employees.

3. GOVERNMENTAL FUNCTION—*operation of Joliet penitentiary is exercise of.* The penitentiary at Joliet, is operated by the State as a State institution, and in the operation of the stone quarry at said penitentiary, the State acts in a governmental capacity.

4. PRACTICE—*Court cannot disregard legal principles.* The Court of Claims, in the exercise of the equitable powers of which it is possessed, cannot disregard legal principles.

William A. Murphy, for Claimant:

By analogy to the relation of master and servant, it was the duty of the State to use reasonable care in furnishing claimant, its servant, reasonably safe appliances wherewith, and places wherein, to do his work.

*Orr* v. *Waterson,* 228 Ill., 138; *Mo. Malleable Iron Company* v. *Dillon,* 206 Ill., 145; *Armour* v. *Brazeau,* 191 Ill., 117.

A master is presumed to have notice of any defect in the appliances or materials furnished to the servant, which, by the use of ordinary care, he might know.

*Consolidated Coal Co.* v. *Haenni,* 146 Ill., 614.

It is the master's duty to find out defects which a reasonable investigation will disclose. The employer has a duty of inspection as well as observation.

*Ill. Steel Co.* v. *Mann,* 100 Ill. App., 367.

A servant, while bound to take notice of patent defects in an appliance, is not required to make an examination for latent ones, and may properly act on the presumption, that the master has used ordinary care to make the appliance reasonably safe.

*Leonard* v. *Kinnare,* 174 Ill., 532.

No defect is latent, which an inspection will disclose.

*Libby MacNeill & Libby* v. *Cook,* 123 Ill. App., 574.

Knowledge of defects from which an injury results, is a matter of defense, and the burden of proof is on the defendant to show that it was possessed by the plaintiff.

*George B. Swift Co.* v. *Gaylord,* 126 Ill. App., 281; *Pressed Steel Car Co.* v. *Herath,* 110 Ill. App., 596; *C. & E. I. R. R. Co.* v. *Hines,* 132 Ill., 161.

In order to charge an employee with negligence, he must know of the defect, and know that it is such as will interfere with the use of the appliance, so as to make it dangerous to use it.

*Hartrich* v. *Hawes,* 202 Ill., 334.

P. J. Lucey, Attorney General, and Arthur R. Roy, Assistant Attorney General, for State:

The doctrine of *respondeat superior* does not apply to the State, and the State, in the absence of statute providing therefor, is not liable in damages for the malfeasance, misfeasance or negligence of its officers, agents or employees.

*Alexander* v. *State,* 1 Ct. of Cl. Rep., 214; *Brewster* v. *State,* 1 id., 215; *O'Donnell, Administrator,* v. *State,* 1 id., 255; *Belt* v. *State,* 1 id., 266, and other cases cited.

One who knows of defects, but does not report the same to his superior, cannot recover.

*Herring Admx.,* v. *State,* 1 Ct. of Cl. Rep., 228.

In order that a servant may recover upon the ground of negligence of the master, three things must concur: (1) that the appliance was defective; (2) that there was actual notice to the master, or imputed knowledge; (3) that there was ignorance upon the part of the servant of the defect.

*Goldie* v. *Werner,* 151 Ill., 551; *Howe* v. *Medaris,* 183 Ill., 288; *L. E. & W. R. R. Co.* v. *Wilson,* 189 Ill., 89.

A legal or equitable right must exist as the basis of an award by the Court of Claims.

*Oliver* v. *State,* 1 Ct. of Cl. Rep., 218; *Hatfield* v. *State,* 1 Ct. of Cl. Rep., 223.

Claimant, while in the employ of the State as a guard or keeper at the penitentiary at Joliet, met with accident and injury in the stone quarry, operated in connection with the penitentiary, on November 4, 1910.

In the operation of the stone quarry, the State had various employees who had charge of the quarrying and crushing of stone, and the actual work was principally done by convict labor. The quarry was exca-

vated to a depth of about fifty feet below the level, upon which was located the stone crusher, and running from the floor of the quarry to the crusher, was an incline upon which were laid tracks. On these tracks, steel cars loaded with stone, were conveyed from the quarry to the crusher, the cars being drawn up the incline by cables operated by electric power. On one end of the car in question, was a draft iron or draw bar, fastened underneath the body of the car. This draft iron was about an inch and a half wide, a half inch thick and sixteen inches long, bolted to the underside of the body of the car, and had a hole in the projecting end in which was placed a hook connected with the cable, when it was desired to draw the car up the incline.

On the day in question, and at the time of the accident, one of these cars had been loaded and drawn up on the tracks, so that it was partly over the top of the incline, and while in this position, the car itself was standing on an angle with the cable pulling against the draft iron, not on a line with the floor of the car, but, on an angle with the floor. While the car was in this position, the draft iron broke, and the car went back down the incline, nothing having been provided to hold it. When it struck the bottom, it overturned, and the stones with which it had been loaded, were thrown about promiscuously, and one of them struck claimant, who, at the particular moment, was running away from the incline as rapidly as he could. Claimant had been employed about the base of the incline superintending the handling of the cars by the convicts.

The cause of the accident was the breaking of the draft iron, and one witness testified that the break was partly an old one, being partly rusty and partly fresh, and another witness testified, it was entirely a fresh break. The break was at the point where the draft iron was bolted to the bed of the car.

The injury consisted of a compound, comminuted fracture of the tibia of the left leg, and a simple fracture of the fibula. There is a shortening of the left

leg of about one and a half inches, and the attending physicians agree, that claimant will be permanently crippled, and will be unable to perform any labor that will require him to walk about to any great extent. Claimant is forty-three years of age.

The State does not contest the extent of the injury, nor is there any contention over the manner in which the accident happened.

The claim is defended on the ground that claimant had notice of the defect, and that the doctrine of *respondeat superior* is not applicable. Claimant attempts, by analogy, to apply the rule of law applicable to the relation of master and servant to the case at bar.

One of claimant's witnesses testified, that about an hour and a half before the accident, he told claimant of the defect in the iron bar. Claimant's recollection as to this testimony is indistinct, and there is no categorical denial by him of the statement of this witness on this proposition, but on this branch of the case, if the law which is applicable to the relation of master and servant were to be followed, we would be compelled to hold that such knowledge alone on the part of claimant, taken in connection with a consideration of the whole record, would not bar a recovery by claimant on the ground, that he assumed the risk or was guilty of contributory negligence. All this evidence shows is knowledge of the defect, but the record is silent on any knowledge of, or appreciation of danger, due to the existence of the defect, on the part of claimant. There is no evidence that claimant was charged with any duty in connection with the care or management of the car in question.

But, viewed from the claimant's side of this case, there is a far more serious question involved. As stated in *O'Donnell* v. *State,* 1 Ct. of Cl. Rep., at page 255, 256: "This Commission can, therefore, allow claims against the State, only in cases where by express statutory provision the legislature has cre-

ated a liability on the part of the State for the acts of its agents; or rather, waived the exemption of the State from such liability." We can allow claims in those cases wherein the State has not acted in the governmental capacity but has been conducting a business enterprise.

While it was stipulated in this case, that the penitentiary in question, was being operated by the State as a State institution, there is no evidence in the record, that the operation of the quarry was any other or different in its purpose, than other work done by convicts in the penitentiary. We have no right to assume from the state of the record, nor could we so hold, unless the evidence were before us, that the quarry in question, was conducted by the State otherwise than in its governmental capacity. There is no evidence that it was conducted as a business enterprise. It has likewise been held by this Court, and by many other courts, that the rule of *respondeat superior* does not apply to the State. This statement, of course, must be limited to cases wherein the State is exercising its governmental functions.

While claimant was in the employ of the State, and paid by the State, we cannot agree with his contention, in our interpretation of the law, that an analogy can be drawn between his relations with his employer and the relation of master and servant. Hence, we must hold, because of the legal status of the parties as hereinbefore pointed out, that the law and rules with reference to the relation of master and servant are here inapplicable.

As has also been repeatedly held by this Court, we cannot, in the exercise of such equitable powers as the statute has conferred upon us, disregard legal principles, even though we might be constrained to award damages.

The injuries sustained by claimant are severe, and would readily entitle him to a judgment of at least $2,500 in courts of general jurisdiction, against an em-

ployer, and we would be inclined to award him that amount were it in our power.

However, we must reject this claim for the reasons stated, but under the authority conferred upon us by statute, we direct that the rejection of this claim shall not conclude the claimant, should he endeavor to otherwise obtain redress for the injuries by him sustained.